United States District Court
Southern District of Texas
**ENTERED**
December 09, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAVERICK GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-2471 |
| | § | |
| ROSENBERG POLICE | § | |
| DEPARTMENT, *et al.* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In this civil rights action, Plaintiff Maverick Gonzales, who proceeds *pro se*, alleges that Officer Dan Joshua and Officer Adam Vasquez of the Rosenberg Police Department ("Defendants") used excessive force against him during an arrest.[1] Defendants have filed a Motion for Summary Judgment [Doc. # 21] requesting dismissal of all of Plaintiff's claims. Plaintiff has filed a Response, which also makes a cross-motion for summary judgment [Doc. # 23], and Defendants filed their opposition to the cross-motion [Doc. # 24]. The motions now are ripe for decision.

---

[1] Plaintiff's Complaint [Doc. # 1] named only the Rosenberg Police Department as a Defendant in this action. After screening the Complaint and ordering a More Definite Statement, the Court ordered service of process on Officer Joshua and Officer Vasquez only. As held herein, Plaintiff has not stated a claim against the Rosenberg Police Department.

Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court determines that Defendants' summary judgment motion should be **granted** on qualified immunity grounds and that Plaintiff's summary judgment motion should be **denied**.

I. **BACKGROUND**

On the evening of May 6, 2015, at approximately 7:03 p.m., Plaintiff Gonzales was pulled over by Officer Aerial Ronell of the Rosenberg Police Department while riding his bicycle down the center turn lane of the road. Officer Ronell observed Gonzales to be intoxicated in public and a danger to himself and others. Declaration of Officer Aerial Ronell [Doc. 21-1] ("Ronell Declaration"), at 2, ¶ 6. Gonzales consented to a search of his person, and Officer Ronell recovered two knives and a pipe used to smoke marijuana. Ronell Declaration at 2, ¶ 6. *See* Response, at 1-2, ¶ 3. Gonzales contends that he was fully compliant with all of Officer Ronell's instructions, *see id.*; More Definite Statement [Doc. # 13] ("MDS"), at 1, ¶ 3, and video evidence from Officer Ronell's patrol vehicle supports his statement.[2] The

---

[2] The dashboard camera from Officer Ronell's police vehicle, submitted to the Court on DVD, shows that Gonzales complied with Officer Ronell's instructions to place his hands on the hood of her vehicle, cooperated with her search of his person, and obeyed her instruction to remain with her hands on the vehicle as she questioned him. *See* Exhibit 9 to Defendant's Motion (DVD from Officer Ronell's patrol vehicle) [Doc. # 22] ("Ronell Video"), at time-stamp 7:03.

video also records Gonzales sipping from his beer can as Officer Ronell searches and questions him and telling Officer Ronell that he had consumed three to four beers. Ronell Video, at time-stamp 7:04. Officer Ronell searched and questioned Gonzales for approximately five minutes, and the video demonstrates that this portion of the Gonzales's encounter with the police was calm. *Id*. at time-stamp 7:03-7:08.

At approximately 7:08 p.m., Officer Joshua and Officer Vasquez, the Defendants in this lawsuit, arrived on the scene while Officer Ronell was in the process of searching Gonzales. Declaration of Officer Dan Joshua [Doc. # 21-3] ("Joshua Declaration"), at 2, ¶ 6; Declaration of Officer Adam Vasquez [Doc. # 21-2] ("Vasquez Declaration"), at 2, ¶ 6.[3] Officer Ronell states that she had not yet determined that Gonzales had no additional weapons, and Officer Vasquez and Officer Joshua each state that he was aware that the search was incomplete. Ronell Declaration, at 2, ¶ 7; Vasquez Declaration, at 2, ¶ 6; Joshua Declaration, at 2, ¶ 6. The declarations from all three officers describe Gonzales as "obviously" intoxicated. Vasquez Declaration, at 2, ¶ 6; Joshua Declaration at 2, ¶ 6; Ronell Declaration at 2, ¶ 7. Officer Ronell informed the other officers upon their arrival that Gonzales had been "drinking right in front of [her]." Ronell Video, at time-stamp 7:08.

---

[3] The second patrol vehicle also had a dashboard camera that recorded the incident. *See* Exhibit 8 to Defendant's Motion (DVD from Officer Joshua's and Officer Vasquez's patrol vehicle) [Doc. # 22] ("Joshua/Vasquez Video").

The parties agree, and the video evidence supports, that tensions quickly escalated when, within seconds of the male officers' arrival, Gonzales attempted to take another drink from his beer. The video evidence shows that Gonzales picked up his beer can and, when Officer Vasquez attempted to take the can away, maintained his grip on the can. Ronell Video, at time-stamp 7:08. Officer Vasquez then grabbed Gonzales by the neck and arm. *Id.* Officer Vasquez declares that, when Gonzales did not release the beer can, he believed that Gonzales had become combative:

> [I]t was obvious to me based upon my observation of Gonzales's demeanor and body language that he was about to become violent. Gonzales turned toward me and tensed his arm arms and torso, which in my experience is indicative of an individual becoming combative.

Vasquez Declaration, at 2, ¶ 6.[4] Gonzales maintains he did not make any explicit or implicit verbal threats or threatening moves toward the officers prior to the use of force. MDS at 1, ¶¶ 4-5. He states:

> I had my hands on the car still from when the female officer had stopped me, being total[l]y compliant, with one hand, picked up my beer, [Officer] Vasquez said, "Are you serious?" while grabbing me by the throat, at the same time [as] [Officer] Joshua [was] rushing me to the side of the patrol car, where they commenced to beating [sic] me with punches and kicks.

MDS at 1, ¶ 3. Gonzales contends that he was given no instructions to put the beer

---

[4] Officers Joshua and Ronell each state that "Gonzales tensed his arm arms and torso, which in my experience is indicative of an individual resisting detention." *See* Joshua Declaration at 2, ¶ 7; Ronell Declaration at 3, ¶ 8.

can down or hand it over.  Response at 2, ¶ 4.[5]

Officer Vasquez declares that he initially intended to establish control by placing Gonzales back against the hood of the patrol car, but that Gonzales resisted. Vasquez Declaration, at 2, ¶ 6.[6]  The video reflects that, after Officer Vasquez grabbed Gonzales's neck and arm, Gonzales raised his left elbow to push Officer Vasquez back.  Ronell Video, at time-stamp 7:08.  The video also reveals that, when Officer Joshua attempted to restrain Gonzales's arms and hands, Gonzales resisted.  *Id*.; *see* Joshua Declaration at 3, ¶ 9.

At approximately 7:08 p.m., about seven seconds after Officer Joshua and Officer Vasquez arrived on the scene, the officers pulled Gonzales onto the ground, which was out of view of the dashboard cameras.  Ronell Video, at time-stamp 7:08; Joshua/Vasquez Video; *see* Vasquez Declaration at 2-3, ¶¶ 6-8.  Officer Vasquez

---

[5] With his response and cross-motion, Plaintiff submits a document he identifies as a printout of comments made by persons who viewed the video on Facebook, and maintains that "every comment from people that have viewed the video says Rosenberg [Police Department] is wrong."  Response, at 2, ¶ 13; *see* Doc. # 23-1 (printouts).  Defendants object to Plaintiff's submission as on the grounds that it is unverified, hearsay, irrelevant, and inflammatory.

[6] Officer Joshua additionally states that, when Officer Vasquez attempted to restrain Gonzales through the use of an arm bar control and restraint technique, "Gonzales increased the level of his resistance and Officer Vasquez could not get control of Gonzales while he was standing upright."  Joshua Declaration at 3, ¶ 8.  Officer Vasquez and Officer Ronell use identical language to that of Officer Joshua.  *See* Vasquez Declaration at 3, ¶ 7; Ronell Declaration at 3, ¶ 9.

states that Gonzales then refused to comply with orders to surrender his arms and hands, which were under his body. Officers Vasquez avers:

> Due to these circumstances, I believed it was necessary to administer 4 or 5 closed fist strikes to Gonzales's back and sides of his torso to gain control of his arms and hands. Deploying strikes in this manner is classified as a pain compliance technique. Causing temporary discomfort is often effective in persuading a resisting suspect to submit to arrest. This technique was ultimately successful.

Vasquez Declaration at 3, ¶ 10.[7] Gonzales released his hands from under his body, and Officers Vasquez and Ronell placed him in handcuffs. Vasquez Declaration at 3, ¶ 10. The Ronell Video shows that, at approximately 7:09 p.m., Officer Vasquez and Officer Joshua pushed Gonzales onto the hood of the police vehicle, chest down, with Gonzales's hands cuffed behind him. Ronell Video, at time-stamp 7:09.

Gonzales alleges that, as a result of the incident, he suffered a dislodged tooth; pain in his face, back, and torso; urination of blood for two weeks after the arrest; and mental anguish. MDS at 1, ¶ 6. Officer Vasquez declares that he observed a laceration to Gonzales's lip and that another officer therefore called for emergency medical personnel, who examined Gonzales and then transported him to Oak Bend Hospital for treatment. Vasquez Declaration at 4, ¶ 11. Gonzales states that he was

---

[7]  *See* Joshua Declaration, at 3, ¶ 11 ("I delivered a few necessary strikes to Gonzales's upper back attempting to gain control of Gonzales during this dynamic, uncertain, and rapidly evolving situation."); Ronell Declaration, at 4, ¶ 12 ("the situation was dynamic, uncertain, and rapidly changing.").

hospitalized for several hours and received painkillers as treatment for his injuries. MDS at 2, ¶¶ 8- 9. Gonzales contends his tooth remains "out of place," and he continues to experience mental anguish. *Id.* at 1, ¶ 10.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving

party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not

met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent

and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

### III.   ANALYSIS

Plaintiff brings a claim against Officer Vasquez and Officer Joshua for use of excessive force during his arrest, in violation of the Fourth Amendment to the United

States Constitution. Plaintiff brings his claim pursuant to 42 U.S.C. § 1983, which provides a civil remedy for violations of constitutional rights by a person acting under color of law.[8]

The Fourth Amendment guarantees the right to be free from excessive force during an arrest.  A plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2016).  *See Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  The court's inquiry is fact-intensive:

> The inquiry is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  The use of force must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Factors to consider in determining whether the force was objectively reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[8] Although Plaintiff's Complaint [Doc. # 1] named the Rosenberg Police Department as a Defendant in this action, Plaintiff has not stated a claim against that entity.  To prove a Section 1983 claim against a municipality, a plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. Feb. 27, 2013).  Plaintiff has not alleged any official policy that caused the alleged use of excessive force against him.  Rather, Plaintiff's Section 1983 claim properly is brought against the individual officers.

>safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Griggs*, 841 F.3d at 312 (internal citations and quotation marks omitted).

Defendants in this case have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See id*.; *Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide whether plaintiff has alleged a violation of a clearly established constitutional or statutory right; and second, the court must determine whether the defendant's actions were "objectively reasonable" in light of the law that was clearly established at the time of the incident. *See Griggs*, 841 F.3d at 312-13; *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *see Griggs*, 841 F.3d at 312; *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016). The "'defendant's acts are held to be objectively reasonable unless ***all*** reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'" *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 457 (5th Cir. 2001)) (emphasis in original). Put another way, "'[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were

violated, the officer's qualified immunity remains intact.'" *Griggs*, 841 F.3d at 313 (quoting *Tarver v. City of Edna*, 410 F.3d 742, 750 (5th Cir. 2005)).[9]

Plaintiff relies on the video evidence to prove that the force used against him was unreasonable. *See* Response, at 2, ¶ 13. As recounted above, the video evidence shows the following: Gonzales was complying with Officer Ronell's search and questioning and was occasionally drinking from his beer can during the encounter. After Officer Vasquez and Officer Joshua arrived on the scene, Officer Ronell informed them that Gonzales was "drinking right in front of [her]." Gonzales then attempted to take another drink from the can. Without instructing Gonzales to put the can down, Officer Vasquez attempted to take away the can away from him. Gonzales maintained his grip on the can. Officer Vasquez then grabbed Gonzales by the neck and arm. Gonzales raised his left elbow to push Officer Vasquez back. Gonzales resisted as Officer Vasquez attempted to restrain him against the hood of the patrol vehicle, and as Officer Joshua attempted to restrain Gonzales's arms and hands. Officers Joshua and Vasquez then pulled Gonzales to the ground, which was off-camera, and the video captures sounds of a struggle. After approximately one minute, the officers pushed Gonzales back onto the hood of the vehicle, and into the camera's

---

[9] At all stages of the inquiry, the officers' subjective motivation or intent is irrelevant. *See Griggs*, 841 F.3d at 312 (citing *Graham v. Connor*, 490 U.S. 386, 398 (1989) (Fourth Amendment standard); *Cozzo v. Tangipahoa Par. Council–Pres. Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (qualified immunity standard).

frame, with his hands cuffed.

The officers's declarations state that Gonzales had become combative when he tensed his arms and torso and resisted their attempts to restrain him. *See* Vasquez Declaration, at 2, ¶ 6 ("In such circumstances, it is important to act quickly to establish control of a suspect like Gonzales before he injures an officer"); Joshua Declaration, at 2-3, ¶¶ 7-9. They also declare that Gonzales increased his resistance during the encounter and, because they were not able to gain control of him while he was standing upright, they placed him on the ground. Vasquez Declaration, at 3, ¶¶ 7-8; Joshua Declaration, at 3, ¶ 8; Ronell Declaration, at 3, ¶ 9.[10] Finally, they explain that Gonzales continued to resist detention while on the ground, and that several strikes were necessary to gain control of his arms and hands and thus eliminate the risk that Gonzales could access an additional weapon. Vasquez Declaration, at 3, ¶¶ 9-10; Joshua Declaration, at 3, ¶ 11. The officers declare that their techniques and decisions were in accordance with their training at the police academy. Vasquez Declaration, at 2, ¶ 7, ¶¶ 9-10; Joshua Declaration, at 3, ¶¶ 9-10.

Lieutenant William Henry, an officer with six years of experience at the Rosenberg Police Department who investigated the events in this case, has provided

---

[10]   *See* Vasquez Declaration, at 3, ¶ 8 ("I believed it was immediately necessary to place Gonzales on the ground before Officer Joshua and I would be able to gain full control of Gonzales. Therefore, Officer Joshua and I used leverage to place Gonzales on the ground in the grassy area to the south of the roadway.").

a declaration in support of Defendants. Declaration of Lt. William Henry [Doc. # 21-4]. Lieutenant Henry states that, under the training generally provided to police officers, the Defendants' actions in this case were appropriate given the circumstances. In particular, he states that "Officer Vasquez appropriately took hold of the beer can to prevent Gonzales from getting drunker," *id*. at 2, ¶ 6, that "it was appropriate to place Gonzales on the ground so that officers could gain full control of Gonzales," *id*. ¶ 8, and that "it was appropriate under police training protocol for officers to administer closed fist strikes to Gonzales to gain control of his arms and hands." *Id*. at 3, ¶ 10.

Viewing all facts in the light most favorable to Plaintiff, Plaintiff has not demonstrated a genuine fact issue as to the objective reasonableness of Defendant's actions. The dispositive question before this Court is whether a reasonable officer in Defendants' circumstances would have known that the use of force against Gonzales was clearly excessive to the need. Although the video evidence supports Plaintiff's allegations that Defendants grabbed him by the neck and wrists, punched him, and kicked him, and that Plaintiff initially was compliant with Officer Ronell's instructions, this evidence does not establish that Defendants' use of force was objectively unreasonable, because the evidence also shows without contradiction that Gonzales actively resisted Officer Joshua and Officer Vasquez during the encounter.

In particular, he did not release his grip on the beer can, he pushed Officer Vasquez away with his elbow, and he resisted the officers' attempts to retrain and cuff him. As stated above, a subject's active resistance to arrest is a factor that courts consider when deciding whether an officer's actions were objectively reasonable. *Griggs*, 841 F.3d at 312 (citing *Graham*, 490 U.S. at 396; *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).[11]

In addition, reasonable officers in Defendants' circumstances could have concluded, based on police protocols, that a limited use of force was necessary to eliminate the risk that Gonzales could harm them. The officers each perceived that Gonzales was intoxicated, and each was aware that the search of Gonzales's person was incomplete. *See* Ronell Declaration, at 2, ¶ 7; Vasquez Declaration, at 2, ¶ 6; Joshua Declaration, at 2, ¶ 6. Although Plaintiff states that he was "never [] a threat to anybody," *see* Response, at 2, ¶ 4, the question before the Court is not whether Plaintiff *actually* posed a threat to the officers, but rather whether the officers' use of

---

[11] In addition to the video evidence, Plaintiff submits documents to the Court that he identifies as comments posted on Facebook in response to a video of the encounter at issue, in which multiple commenters state their opinion that Defendants violated Plaintiff's rights. Defendants have objected to the submission. The Court need not, and does not, consider the Facebook comments because, even if the Court were to admit the document over Defendants' objection, it would not change the Court's ruling in this case. The opinions of Facebook commenters, even if admitted, would be irrelevant to whether a reasonable officer on the scene would have known that, in light of clearly established law, Defendants' actions violated Gonzales's Fourth Amendment rights.

force was objectively reasonable given the facts and circumstances confronting them at the time. *See Griggs*, 841 F.3d at 312 ("The use of force must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight") (internal citation and quotation marks omitted).

Given the particular facts and circumstances of this case, as captured on video, Plaintiff has not demonstrated a genuine issue of material fact as to whether the Defendants' conduct was objectively unreasonable. *See Griggs*, 841 F.3d at 312-13; *Collins*, 382 F.3d at 537; *Hampton*, 480 F.3d at 363. Summary judgment is granted in Defendants' favor on qualified immunity grounds.

## IV. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 21] is **GRANTED**. All of Plaintiff's claims are **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's cross-motion for summary judgment [Doc. # 23] is **DENIED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **9th** day of **December, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE